IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDRES MEJIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-2798-BH |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

By order filed December 5, 2013, this matter was transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, filed August 20, 2013 (doc. 6). Based on the relevant filings and applicable law, the motion is **GRANTED**.

## I. BACKGROUND

This action involves the foreclosure of real property located at 3300 N. Harvard Street, Irving, Texas 75062 (the Property). (Orig. Compl. (doc. 1-3) at 3.)[1] On May 2, 2013, Andres Mejia (Plaintiff) filed this action against Bank of America, N.A. (Defendant) in the 116th Judicial District Court of Dallas County, Texas. (*Id.* at 2.) He alleged that he purchased the Property on February 24, 2003, with a mortgage loan from Irwin Mortgage Corporation (IMC) for $98,029.00. (Am. Compl. (doc. 5) 1–2.) He executed a note and a deed of trust securing the note in IMC's favor. (*Id.*

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

at 2.)[2] The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary of the deed of trust. (*Id.*)

The note and deed of trust were purportedly "transferred" to Defendant, who "also acted as the loan servicer." (*Id.*) At some point, Plaintiff experienced "financial difficulties" and "entered into debt restructuring negotiations" with Defendant "to modify the terms and conditions of the Note." (*Id.*) He submitted a loan modification application along with all of the required paperwork. (*Id.*) During the application process, Defendant's representatives allegedly instructed him not "to make any mortgage payments" while his application was pending and to "ignore any foreclosure notices that he received" because Defendant "would not take any action to foreclose on the Property while [his] loan [was] in modification status." (*Id.*) Nevertheless, he claims that while he "await[ed] confirmation of the loan modification application," Defendant unexpectedly foreclosed on the Property on October 2, 2012, and later served him with an eviction notice. (*Id.*)

Plaintiff contends that the foreclosure sale and his attempted eviction were wrongful because Defendant failed to give him "notice" as it was required to do under the note, the deed of trust, and the Texas Property Code. (*Id.* at 2–3.) His first amended complaint expressly lists claims for trespass to try title, breach of contract, and common law fraud. (*Id.* at 3–4.) He seeks actual and exemplary damages and reasonable attorney's fees. (*Id.* at 4.)

On May 3, 2013, the state court issued a Temporary Restraining Order (TRO) enjoining Defendant and its agents from continuing the foreclosure process and evicting Plaintiff from the Property. (doc. 1-5 at 2–3.) Defendant removed the action to federal court based on diversity jurisdiction on July 18, 2013, and moved to dismiss the amended complaint a few days later. (doc.

---

[2] Maria Mejia, Plaintiff's wife, was also a signer on the note and deed of trust. (doc. 1-3 at 5.) She later transferred her interests in the Property to Plaintiff via a "special warranty deed" and is not a party to this suit. (*Id.*)

6.) With a timely-filed response and reply, the motion is now ripe for determination.

## II.  MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 6.)

**A.    Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert denied*, 530 U.S. 1229 (2000); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that

3

is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**B.**     **Trespass to Try Title**

Defendant first moves to dismiss Plaintiff's claim for trespass to try title on grounds that he "has not alleged facts supporting any of [the] elements" of the claim. (doc. 6 at 3–4.)

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2000). This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted). To prevail, a plaintiff must: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 747, 767 (N.D. Tex. 2012) (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)). Ultimately, the plaintiff "must recover upon the strength of his own title and not the weakness of the defendant's title." *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64

4

Tex. 179 (1885)).

Plaintiff alleges that he purchased the Property on February 24, 2003. (doc. 5 at 1–2.) He claims that he is currently in possession of the Property and "has never relinquished [its] possession" to Defendant, and that Defendant attempted to "dispossess him of the Property" and thereby caused him injury. (*Id.* at 3.) Plaintiff does not allege, and there is nothing in his pleadings to indicate, that he has superior title to the Property vis-à-vis Defendant. Ultimately, since a trespass to try title action is in its nature a suit to *recover* the possession of property (*see Rocha*, 574 S.W.2d at 236), Plaintiff fails to state a plausible claim in light of his own allegations that he has never lost or relinquished possession of the Property to Defendant. *See Martinez v. CitiMortgage, Inc.*, No. CIV.A. H-13-0727, 2013 WL 2322999, at *2 (S.D. Tex. May 28, 2013) ("Plaintiff does not allege[] that [the defendant] has dispossessed him of the Property. Indeed, he alleges specifically that he is 'currently in possession of the Property'. . . As a result, Plaintiff has failed to plead a viable trespass to try title claim."); *Hurd*, 880 F. Supp. 2d at 767 ("Since Plaintiff has failed to allege that she has lost possession of the property, her claim for trespass to try title fails and should be dismissed with prejudice."). Defendant's motion to dismiss this claim is therefore granted.

## C. **Breach of Contract**

Defendant next moves to dismiss as factually and legally unsupported Plaintiff's breach of contract claim, which is based on his allegation that Defendant breached the note and deed of trust by failing to provide him with "notice" before foreclosing on the Property. (doc. 6 at 4–5.)[3]

---

[3] Defendant also construes the complaint as asserting a claim that it breached an alleged promise not to foreclose while Plaintiff's loan modification was pending. (doc. 6 at 4–5.) It moves to dismiss the claim on grounds that it is barred by the statute of frauds. (*Id.*) In his response, Plaintiff "agrees with the Defendant" that the statute of frauds bars any claim that Defendant's alleged representations that it would delay foreclosure during the pendency of his application "modified the Note and Deed of Trust." (doc. 8 at 2.) Given Plaintiff's concession, any claim for breach of a promise to delay foreclosure is not addressed.

5

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

### 1.     *Defendant's Breach of the Note and Deed of Trust (Failure to Give Notice)*

According to Defendant, Plaintiff fails to state a claim that it breached the note and deed of trust because he "does not explain what notice [was] required, what notice was actually provided, or how the actual notice was deficient." (doc. 6 at 5.)

Plaintiff claims that Defendant "wrongfully" foreclosed on the Property "in violation of the parties' agreement" and without first giving him "proper and timely notice . . . as [it was] required by the Note and Deed of trust." (doc. 5 at 2.) He does not identify, however, a specific provision of the note and deed of trust requiring Defendant to provide him with any notice before foreclosing on the Property. He also fails to specify which or what type of notice Defendant was supposed to give him. Without more, Plaintiff's conclusory allegations fail to meet the pleading standards under *Twombly*, and fail to state a plausible breach of contract claim on this basis.[4]

### 2.     *Plaintiff's Breach (Default on his Mortgage Payments)*

Plaintiff admits that he breached the lending agreement by failing to make his mortgage payments during the pendency of his modification application. (docs. 5 at 2; 8 at 2–3.) In his response, he clarifies that he is not "strictly seeking to enforce the oral agreement to modify the

---

[4] Plaintiff also states that Defendant was required to give him notice under the "Texas Property Code." (*See* doc. 5 at 2.) Because he does not specifically list a claim under the Texas Property Code or even specify which provisions Defendant allegedly violated, any claim under the Code is not properly before the Court and is not considered.

loan," but "is asserting a more limited claim that [Defendant] cannot assert that he is in default"[5] (i.e., that Defendant waived his own breach) because Defendant's representations that he should not make payments and that it would not foreclose while his application was pending "induced the default". (doc. 8 at 2–3.)

Defendant replies that Plaintiff's allegations are meritless because: (1) the complaint does not indicate that Defendant induced the default since "it is silent about when [Defendant's] representatives told him to stop making mortgage payments", and (2) "Texas courts have not adopted" § 150 of the Restatement (Second) of Contracts, on which Plaintiff's "waiver" theory is based.[6] (doc. 9 at 2.)

    a.    <u>Timing of Plaintiff's Default</u>

According to the first amended complaint, Plaintiff at some point encountered financial difficulties and contacted Defendant for assistance. (doc. 5 at 2.) After Defendant "offered" him a loan modification, he submitted an application along with all of the requested documentation. (*Id.*) "During the course of [the application] process, [Defendant's] representatives [allegedly] informed him that he was not allowed to make any mortgage payments" and that Defendant would not foreclose on the Property during the pendency of his application. (*Id.*) He states in his response that he "was not in default" when Defendant's representatives made these assertions, and that "the mere

---

[5] Ordinarily, Plaintiff's conceded default would prevent him from maintaining a breach of contract action against Defendant. *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *3 (N.D. Tex. Oct. 3, 2012) ("Under Texas law, a party to a contract who is himself in default cannot maintain a suit for its breach.") (Fitzwater, C.J.) (citations omitted); *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach.").

[6] Defendant also argues that Plaintiff's "inducement" argument "is an attempt to assert a defense to breach of contract rather than a claim against Defendant." (docs. 6 at 5; 9 at 2.) Plaintiff does not appear to assert a "defense" to a breach of contract claim, however. He instead argues that Defendant cannot enforce the terms of the deed of trust by foreclosing on the Property based on his default because Defendant induced the default. (*See* doc. 8 at 2.)

7

fact that he was experiencing 'financial difficulties' does not mean that he could not have continued to make his payments." (doc. 8 at 3.)

Taking these allegations as true for purposes of this motion and viewing all reasonable inferences in Plaintiff's favor, as the Court must, the allegations state a plausible claim that Plaintiff defaulted on his mortgage payments after Defendant's agents made the purported representations. *See Gonzales v. Bank of Am., N.A.*, No. CIV.A. G-12-292, 2013 WL 140093, at *1 (S.D. Tex. Jan. 10, 2013) ("The Court infers from the allegations that [the] Plaintiffs were not in default at [the] time" that the defendant's "representatives informed [them] *that they were not allowed* to make any mortgage payments . . . while in loan modification" status.) (emphasis in original).

     b.  Validity of Plaintiff's "Waiver" Claim under Texas Law

Plaintiff relies on *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 584 (W.D. Tex. 2012) to support his theory that Defendant cannot assert he is in default because its representations caused the default. (doc. 8 at 2.) In *Montalvo*, the plaintiff alleged that the defendants refused to allow her to cure her default and instructed her to pay a lower amount than what was required under the note during the loan modification process. *Montalvo*, 864 F. Supp. 2d at 584. The magistrate judge construed the plaintiff's allegations as part of her "breach of contract claim," which was apparently based on her contention that the defendants breached an oral promise to delay foreclosure while her modification application was processed. *Id.* at 585–86. Finding that the alleged promise was barred by the statute of frauds, the magistrate judge recommended that the defendant's summary judgment motion be granted. *Id.*

Relying on "comment b" of § 150 of the Restatement (Second) of Contracts, the plaintiff argued that she did "not seek to enforce the [parties'] oral agreement to modify the loan," but instead

8

"assert[ed] a more limited claim that [the] Defendants [could not] assert that [she] [was] in default under the original loan because [they] induced the default." *Id.* at 584.[7] The district judge found some merit in her argument, noting a "distinction between seeking to enforce an agreement barred by the statute of frauds and seeking to estop a party to an enforceable contract from asserting a breach."[8] *Id.* at 585. "Because Defendants did not expressly move for summary judgment" on this aspect of the plaintiff's breach of contract claim, however, he found that the claim "remain[ed] pending" and ordered additional briefing. *Id.* at 586.

On review of the defendant's supplemental motion for summary judgment, the court construed the plaintiff's argument that the defendants induced her to remain in default by making lower payments as "asserting that [they had] affirmed her contractual breach." *Montalvo v. Bank of Am. Corp.*, No. SA-10-CV-360-XR, 2013 WL 870088, at *6 (W.D. Tex. Mar. 7, 2013). It cited to recent Texas Supreme Court precedent suggesting that "[a] party may affirm a contract that has been breached in one of two ways: (1) by evidencing a conscious intent to do so [i.e., waiver]; or (2) by acting so as to induce the other party's detrimental reliance, thereby creating an estoppel

---

[7] Comment b to § 150 provides, in relevant part:
> *Waiver.* Where a contract is modified by subsequent agreement and the contract as modified is within a provision of the Statute of Frauds, the modified contract is unenforceable unless the Statute is satisfied. In such a case, if the original contract was enforceable it is not rescinded or modified but remains enforceable. *See* §149. *But the unenforceable modification may operate as a waiver. See* Uniform Commercial Code § 2-209(4). To the extent that the waiver is acted on before it is revoked, it excuses the other party from performance of his own duty and of conditions of the duty of the waiving party. *Cf.* §§ 246, 247, 278–80.

Restatement (Second) of Contracts § 150 (1981) (emphasis added).

[8] The court explained:
> [I]f a mortgagor changes her position and defaults in reliance on an oral modification agreement, which is unenforceable under the statute of frauds, such that reinstatement of the original terms of the loan would be unjust, the mortgagor's default may be excused and the mortgagee estopped from asserting its rights (such as acceleration and foreclosure) triggered by the default. Such a claim does not attempt to enforce the unenforceable oral agreement, but rather excuses the mortgagor's default under the existing, enforceable loan agreement.

*Montalvo*, 864 F. Supp. 2d at 584.

9

situation." *Id.* (citing *Consolidated Engineering Co. Inc. v. S. Steel Co.*, 699 S.W.2d 188, 191 (Tex. 1985)). It analyzed the plaintiff's allegations under each theory, since her allegations implicated both. *See id.* at *6–14. First, the court held that any "claim of waiver fail[ed] because the claim would solely rely on evidence of the oral representations allegedly made by [the] Defendants" and those representations were barred by the statute of frauds. *Id.* at *8. Regarding estoppel, the court held that this theory failed as well because the plaintiff's "reliance on [the defendants'] oral representations was not reasonable as a matter of law in light of [the] express language in the note, the deed of trust, and the Loan Agreement Notice" that "her rights and obligations would be determined solely from the written loan agreement and that the loan agreement [could] not be contradicted by subsequent oral statements." *Id.* at *13.

Here, Plaintiff relies only on a "waiver" theory. (*See* doc. 8 at 2–3.) In Texas, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012) (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). "[A]n obligee may waive the obligor's requirement for strict compliance with the terms of a contract if the obligee expressly or impliedly assents to the obligor's nonconforming conduct." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298 (5th Cir. 2010) (citation omitted) (alteration in original). To prove waiver, the person asserting it must show "(1) an existing right, benefit, or advantage held by [the other] party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Wiley*, 2012 WL 1945614, at *6 (citation omitted).

10

Plaintiff's waiver theory is based on his allegations that Defendant's representatives instructed him not to make payments while his modification application was under review and assured him that Defendant would not foreclose during that time. (*See* docs. 5 at 2; 8 at 5.) Since the alleged oral representations would have altered the original lending terms by postponing the payments on Plaintiff's mortgage (among other things), his waiver claim is subject to the statute of frauds. *See McDonald v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-2691-B, 2012 WL 2122168, at *5 (N.D. Tex. June 11, 2012) (holding that the plaintiff's theory that the "Defendant[] waived any breach of contract when it instructed her to make" lower payments than were required under the note was subject to the statute of frauds because it "relie[d] primarily on oral representations made by [the defendant's] representatives via telephone"); *see also Triton Commercial Properties, Ltd. v. Norwest Bank Texas, N.A.*, 1 S.W.3d 814, 817 & n. 1 (Tex. App.—Corpus Christi 1999, pet. denied) ("In the present case, it would not be practical to attempt to distinguish the concept of 'waiver' from that of 'modification.' [The] alleged waiver of the deadline for making payment by orally agreeing to late payment is indistinguishable from an oral agreement to modify the time for payment. Accordingly, the statute of frauds applies as it would in the case of any other oral modification.").

The Texas statute of frauds provides that a loan agreement that exceeds $50,000 in value is not enforceable unless it "is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2011). Section 26.02(b) also "makes unenforceable oral modifications to a loan agreement . . . unless they fall within an exception to the statute of frauds or do not materially alter the obligations imposed by the original

11

contract."[9] *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 571 (S.D. Tex. 2012) (internal quotations omitted). Federal courts, including the Fifth Circuit, have held that agreements to postpone mortgage payments and delay foreclosure on the mortgaged property are material alterations "subject to the Texas statute of frauds, and, accordingly, must be in writing to be enforceable." *See, e.g.*, *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 328–29 (5th Cir. 2013) (citations omitted); *Perales v. Wells Fargo Bank, N.A.*, No. SA-12-CV-00515-DAE, 2013 WL 3456998, at *4 (W.D. Tex. July 9, 2013) (collecting cases); *Enis*, 2012 WL 4741073, at *3; *see also* Tex. Bus. & Com. Code § 26.02(a)(2) (defining a "loan agreement" in part as one where a financial institution "agrees to loan or *delay repayment* of money, goods, or another thing of value") (emphasis added). Notably, Plaintiff does not allege that his mortgage, or the loan amount to be modified, was less than $50,000.00,[10] or that Defendant's alleged representations were ever reduced to writing. (*See* doc. 5.) Accordingly, unless an exception applies, any waiver theory is barred by the statute of frauds. *See Montalvo* II, 2013 WL 870088, at *8.

As in *Montalvo*, Plaintiff here relies on "comment b" of § 150 of the Restatement (Second) of Contracts for his proposition that no writing is required in this case because he does not seek to enforce an oral modification of the original mortgage terms, but seeks to show only that his default is excused because it was caused by Defendant. (doc. 8 at 3.)

---

[9] For example, agreements to modify the lending terms, such as the interest rate, the amounts of installments, security rights, and the remaining balance of the loan have been held to be material modifications. *See Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984); *Edward Scharf Associates, Inc. v. Skiba*, 538 S.W.2d 501, 502 (Tex. Civ. App.—Waco, 1976, no writ.).

[10] Plaintiff states that the original loan amount was $98,029.00, and he does not allege that the outstanding principal was less than $50,000.00 by the time he applied for a loan modification. (*See* doc. 5 at 1.)

Federal courts have uniformly found that "Texas [state] courts do not appear to have considered, much less adopted, § 150 of the Restatement." *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-CV-02347-L, 2012 WL 5363424, at *24 (N.D. Tex. Oct. 31, 2012), *vacated in part on other grounds*, 2013 WL 2090307 (N.D. Tex. May 14, 2013) (citing *Montalvo*, 864 F. Supp. 2d at 584); *Wiley*, 2012 WL 1945614, at *7 (same). In addition, regardless of the Restatement's position, some courts have rejected the argument that a lender's oral promise to delay foreclosure results in the waiver of its right to foreclose. Specifically, these courts have reasoned that "allowing a borrower to avoid foreclosure by arguing that he was induced to default based on an oral promise not to foreclose during loan modification negotiations 'would allow [the borrower] to circumvent the statute of frauds by essentially enforcing an unenforceable modification agreement.'" *Martinez*, 2013 WL 2322999, at *2 (citing *Montalvo [I]*, 864 F. Supp.2 at 584); *see also Serna v. U.S. Bank, N.A.*, CIV.A. H-13-2559, 2014 WL 108732, at *2 (S.D. Tex. Jan. 9, 2014) (same); *Montalvo [II]*, 2013 WL 870088, at *6 ("Plaintiff has not provided any authority suggesting that Defendants' oral statements may operate as a waiver . . . nor is the Court aware of any such authority.") (interpreting *Milton* as supporting a conclusion that a lender's "unenforceable oral representations [do] not . . . vitiate the [lender's] right to foreclose") (citing to *Milton*, 2013 WL 264561, at *2).[11]

In conclusion, Plaintiff's waiver theory is unsupported by Texas law and by the federal cases in this Circuit that have addressed similar allegations. Because his waiver theory is unavailing given

---

[11] In *Gonzales*, however, the court denied the defendant's motion to dismiss similar allegations that Plaintiff makes here based on *Montalvo*, finding that "a strong argument appear[ed] to exist for the application of [the] Rule" listed in comment b of § 150 of the Restatement. *See Gonzales*, 2013 WL 140093, at *1–2. Notably, *Gonzales* was decided before the second *Montalvo* opinion, where the court ultimately rejected such a theory. *See id.*; *see also Montalvo*, 2013 WL 870088, at *6.

13

his own default, he cannot maintain a viable breach of contract claim against Defendant. This claim is therefore dismissed.

**C.    Common Law Fraud**

Defendant seeks dismissal of Plaintiff's fraud claim, arguing that his allegations fail to meet Rule 9's heightened pleading requirements. (doc. 6 at 7–8.)

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010)).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires the who, what, when, where, and how to

14

be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations omitted).

The first amended complaint states that at some point Plaintiff experienced financial difficulties and applied for a loan modification with Defendant. (doc. 5 at 2.) While his loan modification application was pending, Defendant's representatives allegedly "informed [him] that he was not allowed to make any mortgage payments" and instructed him to "ignore" any foreclosure notices he may receive since Defendant "would not take any action to foreclose" during that time. (*Id.* at 2–3.) He claims that Defendant "knew that the[se] representations were false" or were made "recklessly," that the misrepresentations were made "with the intent that [he] act on them," that he relied on the misrepresentations, and that he was injured as a result. (*Id.* at 4.)

Although Plaintiff's allegations indicate the "who" and "what" with respect to his fraud claim, he fails to allege any facts indicating the "when, where, or how." *See Benchmark Electronics*, 343 F.3d at 724. For example, he fails to specify the date or approximate time when he experienced "financial difficulties" and applied for a loan modification. (*See* doc. 5 at 2.) He does not state when, where, or how (i.e., by phone, mail, fax, etc.) Defendant's representatives allegedly "informed" him to stop paying his mortgage and ignore any foreclosure notices. (*See id.*) He also fails to state any facts supporting a reasonable inference that Defendant's representatives *intended* that he act on their purported misrepresentations. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) … The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] . . . such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted) (emphasis in original). Lastly, he does not state how he relied on

15

the alleged misrepresentations or the damages that he suffered as a result. (*See* doc. 5 at 2–3.) Because the complaint fails to satisfy Rule 9(b)'s heightened pleading requirements, Plaintiff's claim for common law fraud is dismissed.

### III. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.)(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Nevertheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiff amended his complaint as a matter of course after Defendant removed the action to federal court. (*See* docs. 1-3 and 5.) His claims for trespass to try title and breach of contract are subject to dismissal for failure to state a claim, and his fraud claim is dismissed under Rule 9(b) for failure to plead the elements with particularity. Since it appears that he has not pled his best case to the Court, he is accorded an opportunity to amend his complaint to sufficiently state a claim for relief.

## IV. CONCLUSION

Defendant's motion to dismiss is **GRANTED**. If Plaintiff does not file an amended complaint that states a claim for relief within 21 days from the date of this opinion, judgment in Defendant's favor will be entered, and all of Plaintiff's claims against Defendant will be dismissed with prejudice. If Plaintiff timely files an amended complaint, however, the action will proceed on the amended complaint.

**SO ORDERED** on this 14th day of March, 2014.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE